UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:13-cv-00027-MOC

| | | |
|---|---|---|
| **CONNIE LYNN CARRINGER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment [improperly captioned as a Motion for Judgment on the Pleadings]. After careful consideration of the motions, supporting briefs, the final decision of the Commissioner, and relevant portions of the Administrative Record ("AR"), the court will deny plaintiff's motion, grant defendant's motion, and affirm the final decision of the Commissioner.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff filed an application under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3), to review a final decision of the Commissioner denying her claim for Supplemental Security Income, with an onset date in 2002. Subsequent to the final decision in this case, plaintiff filed a second SSI application, as to which the Commissioner found disability with an onset date of April 1, 2013.

In this matter, plaintiff's request for review was denied and the ALJ's decision was affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

To qualify for SSI payments, an individual must have income and resources not in excess of statutorily specified amounts, be under age 65, file an application, and have a "disability" as defined in the Act. 42 U.S.C. § 1382c. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); see 20 C.F.R. § 416.905(a).

In conducting judicial review of the Commissioner's denial of such a claim, the only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the

undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing (which was conducted via teleconference), closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record that are relevant to her contentions. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

  a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

  b. An individual who does not have a "severe impairment" will not be found to be disabled;

  c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

  d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

**C. The Administrative Decision**

Relevant to the assignments of error raised herein, the ALJ found that plaintiff has the mental RFC to perform simple, routine, repetitive tasks in positions that require up to a reasoning level of 3 (as defined in the Dictionary of Occupational Titles (DOT)). After making such RFC determination, the ALJ called a Vocational Expert ("VE") who testified that a person with such an RFC at reasoning level three could perform jobs such as dining room attendant (reasoning level 2), kitchen helper (reasoning level 2), or sweeper/cleaner (reasoning level 1). Based on plaintiff having the RFC to perform such jobs, which were readily available in the national and regional economies, the ALJ found plaintiff to not be disabled.

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

(1) the ALJ's RFC is inconsistent with his opinion that plaintiff can perform other work;

(2) the ALJ's RFC is insufficient because it doesn't consider all of plaintiff's physical and mental impairments;

(3) the ALJ failed to consider and properly evaluate all of the subjective evidence;

(4) new and material evidence justifies a remand in this case.

Plaintiff's assignments of error will be discussed *seriatim*.

## 2. First Assignment of Error: Improper RFC

Plaintiff first contends that the ALJ's RFC [mental] determination is inconsistent with his opinion that plaintiff can perform other work. A mental RFC finding describes the "most [an individual] can still do despite [her mental] limitations." 20 C.F.R. § 416.945. Plaintiff argues that the ALJ included a mental limitation in the RFC finding that was inconsistent with a medical opinion he relied upon, the opinion of Dr. Strobel-Nuss, Psy.D., and with jobs that were later identified by the vocational expert (VE) at the administrative hearing. Pl. Brief at 6-7. Specifically, plaintiff challenges the ALJ's inclusion of a limitation to work requiring DOT level 3 reasoning skills. Pl. Brief at 5-7.

### a. Reasoning Level 3 in Light of Dr. Strobel-Nuss's Opinion

The DOT assigns a reasoning level to each job included in the dictionary, ranging progressively from level 1 to level 6. The higher the number, the higher the reasoning level that is necessary to successfully accomplish the job. DOT, Appendix C, Section III. A reasoning level of 3, which was assigned by the ALJ in this case, requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to] [d]eal with problems involving several concrete variables in or from standardized situations." Id.

The court has compared such assigned reasoning level with the opinion of Dr. Strobel-Nuss and cannot find that such assignment is inconsistent with such opinion. Instead, such opinion provides substantial support to the ALJ's determination. Dr. Strobel-Nuss opined that plaintiff could understand and remember simple instructions; concentrate well enough to perform

simple tasks; interact with others in a low-stress work setting; and adapt to simple changes in a less-demanding work environment. Tr. 625-27.

Plaintiff alleges that Dr. Strobel-Nuss's opinion is inconsistent with reasoning level 3 because the psychologist also opined that plaintiff would have marked limitations in carrying out detailed instructions. Pl. Brief 6. There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work is consistent with a DOT reasoning level of either 2 or 3. Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (holding that level 3 reasoning is not inconsistent with an ability to perform only "simple" work); Clontz v. Astrue, 2013 WL 3899507, at *5 n.6 (W.D.N.C. Jul. 29, 2013) (noting that that a reasoning level of 3 is consistent with a limitation to simple, unskilled work). The court overrules this part of the first assignment of error.

### b. Inclusion of Reasoning Levels 1 and 2

Plaintiff further argues that the ALJ erred in relying on the VE's testimony that plaintiff could perform tasks at level 1 and level 2 reasoning fails as a matter of logic as the reasoning levels are progressive, not regressive, making a person who functions at level 3 very capable of performing jobs at the lesser levels of 1 and 2, as an RFC determination describes the "most [an individual] can still do despite [her] limitations," not the least she can do. 20 C.F.R. § 416.945. The court overrules the remainder of the first assignment of error.

### 3. Second Assignment of Error: Failure to Consider All Impairments

Plaintiff next contends that the ALJ's RFC was insufficient because it did not take into consideration all of plaintiff's physical and mental impairments. Plaintiff asserts that the ALJ

should have found the following impairments to be severe at step two of the sequential evaluation process: closed head injuries; seizure disorder; chronic obstructive pulmonary disorder (COPD); post-traumatic stress disorder; and personality disorder. Pl. Brief at 7.

When considering a claim for disability, the severity of an alleged impairment is a threshold determination:

> An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience.

Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citations omitted). Put another way, a severe impairment is one which significantly limits an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a). Severe impairments must have lasted or must be expected to last twelve months. 20 C.F.R. §§ 416.909, 416.920(a)(ii). If an ailment is controlled by medication or treatment such that it does not cause work-related limitations, the ailment is not considered severe. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). At the second step of the sequential evaluation process the claimant bears the burden of proving that her impairment is severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, the record does not contain evidence that would have warranted a finding of severity as to any of the additional impairments plaintiff has listed. As to her closed head injuries, which alleged took place one decade and two decades before the alleged onset dates, while medical notes indicate that she told her doctors of such events, she reported no specific symptoms or limitations caused by such accidents. Tr. At 603 & 617; Pl. Brief at 7-8. As to her seizure disorder, the medical records indicate that such problem was treated with Dilantin and no notes reflect any work related limitations caused by that condition. Tr. at 271, 273, 281, 474. As

to her COPD, the treatment notes cited by plaintiff show a diagnosis and treatment with a Combivent inhaler; however, plaintiff reported no trouble breathing and her lungs were clear to auscultation. Tr. 281-82, 423. Thus, there are no work related limitations of record attributable to COPD. In addition, plaintiff contends that the ALJ should have found her PTSD and a personality disorder to be severe. While there is medical evidence of record concerning these conditions, Tr. at 519, 624, and there is some medical evidence therein that her personality disorder influences her functioning, such medical evidence did not specify how her functioning was impacted by such disorders. Rather, the ALJ relied on the opinion of Dr. Strobel-Nuss, who also considered plaintiff's PTSD and personality disorder by reviewing Dr. Marcus's records, and concluded that plaintiff was still capable of understanding and remembering simple instructions, concentrating on simple tasks, interacting with others in a low-stress environment, and adapting to simple changes in a less-demanding work environment. Tr. 627. The ALJ gave great weight to such opinion. Thus, substantial evidence supports the ALJ's severity determination.

A diagnosis that a person suffers from a condition or disease does not establish disabling functional limitations. Presnell v. Colvin, 2013 WL 4079214, at *5 (W.D.N.C. Aug. 13, 2013) (citing Gross v. Heckler, supra, at 1165 (4th Cir. 1986) (finding that although the defendant was diagnosed with certain impairments, these impairments did not render the defendant disabled)). Because the ALJ gave great weight to an opinion that in turn expressly considered plaintiff's conditions (and the evidence at issue), the ALJ's failure to find that condition severe at step two would not have affected the outcome of the decision. Mickles v. Shalala, 29 F.3d 918, 921 (4th

Cir. 1994). Substantial evidence fully supports the ALJ's severity determination and the court overrules plaintiff's second assignment of error.

### 4. Third Assignment of Error: Proper Consideration of All Medical Evidence

In her third assignment of error, plaintiff contends that the ALJ failed to consider and properly evaluate all of the subjective evidence. Plaintiff argues that the ALJ improperly weighed the medical opinions of Frank Virgili, M.D., Dr. Strobel-Nuss, Thomas Clayton, M.D., Paul C. Keely, M.D., Stephen Burgess, M.D., Larry Holder, M.D., Glendon Rougeou, M.D., Charles Watras, M.D., as well as the treatment notes from Appalachian Community Services and Meridian Behavioral Health Services Pl. Brief at 9. Additionally, plaintiff asserts that the ALJ did not consider plaintiff's treatment notes from the Hope Women's Cancer Center, or certain global assessment of functioning (GAF) scores. Pl. Brief at 8-11.

#### a. Dr. Virgili and Dr. Strobel-Nuss

Plaintiff first contends that the ALJ improperly gave these doctors' opinion great weight because they did not include a review of additional evidence that was submitted after they provided their opinions. What is important, however, is whether the ALJ had considered the additional evidence when he decided to give those earlier opinions great weight. As another judge in this court earlier held:

> The fact that the state agency physician did not have access to the entire evidentiary record-because the record was incomplete at the time of the assessment is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination.

Thacker v. Astrue, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011). The ALJ's reliance on those opinions was proper because the record indicates that the ALJ had reviewed the later

9

submitted evidence and that new evidence was consistent with these doctors' opinions. The court overrules this portion of the third assignment of error.

### b. Dr. Holder, Dr. Rougeau, Dr. Watras, the Appalachian Community Services, and Meridian Behavioral Health Services

Plaintiff next contends that the ALJ improperly weighed opinions from these sources. The treatment notes from these sources were not, however, medical opinions that could be afforded weight. Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the] symptoms, diagnosis and prognosis, what [the claimant] can still do despite any impairments, and [] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Review of the notes cited by plaintiff reveal that while they included some diagnoses and treatment descriptions, they failed to detail any functional limitations apart from Plaintiff's own subjective complaints. For example, the MBHS notes state that they are not "intended as an objective evaluation of an individual's status or capacity." Tr. 523, 576.

Under 20 C.F.R. § 404.1513(d), a plaintiff is, however, permitted to submit evidence from "other sources":

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to--
> (1)  Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
> (2)  Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
> (3)  Public and private social welfare agency personnel; and
> (4)   Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

Id. An ALJ is to weigh the opinions from sources who are not acceptable medical sources in accordance with the following factors: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a speciality or area of expertise related to the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. SSR 06-3p; Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001). As none of the notes address functional limitations apart from plaintiff's own subjective complaints, the ALJ properly gave appropriate weight to such materials. The court overrules this portion of the third assignment of error.

### c. Hope Women's Cancer Center

Although plaintiff has asserted that she has undergone numerous procedures to treat cervical cancer, the evidence does not demonstrate that she was ever diagnosed with or treated for cancer. Instead, the medical notes reflect removal of an ovarian cyst in 2005, Tr. 499-500, and the removal of non-cancerous vulvar lesions in 2009. Tr. 593-94. In this sub-contention, plaintiff contends that the ALJ failed to consider the treatment notes from the Hope Women's Cancer Center, found at Tr. 586-592. Such notes do not support a finding of greater limitations than those found by the ALJ; instead, the November and December 2009 treatment notes reflect a cervical biopsy revealing only "mild" dysplasia (not cancer), and the subsequent removal of pre-cancerous lesions. Tr. 587, 593-98.

None of the notes cited by plaintiff discuss functional limitations; thus, such materials are not inconsistent with the ALJ's RFC finding. That the ALJ did not discuss notes that did not

impact plaintiff's ability to work is not evidence that he failed to consider them. Scott v. Colvin, 2014 WL 29458, *4 (E.D.N.C. Jan. 3, 2014) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). Generally, failure by the Commissioner to consider an entire line of evidence falls well below the minimal level of articulation required by the Social Security Act. Diaz v. Chater, 55 F.3d 300, 307 (7th Cir.1995). However, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). The court overrules this portion of the third assignment of error.

### d. Dr. Clayton

Plaintiff also contends that the ALJ did not give adequate weight to Dr. Clayton's November 2006 opinion that Plaintiff was "not able to work or be gainfully employed at this time." Pl. Brief at 9, Tr. 273. The ALJ afforded that vocational conclusion by Dr. Clayton minimal weight.

While the ALJ acknowledged that Dr. Clayton was a treating physician, he explained that he gave "minimal weight" to the opinion because it was inconsistent with "the longitudinal record and not supported by treatment notes." Tr. at 22. Specifically, the ALJ noted that the treatment notes reflected that the plaintiff was non-compliant with her medication use, and that she reportedly felt better with medication, treatments, and exercises. The ALJ also explained that he gave less weight to the opinion because it was an opinion on an issue reserved to the Commissioner. Id.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983).The opinion

of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). Medical opinions that go to the ultimate vocational issue of ability to work invade the province of the Commissioner, who is ultimately charged with determining whether a claimant meets the statutory definition of disability. 20 C.F.R. § 416.927(d). Thus "medical opinions" which seek to opine on a patient's capacity for work, even from treating physicians, are opinions "on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(d). As a matter of law, such opinions are not entitled to controlling weight or special significance under the regulations. 20 C.F.R. § 416.927(d)(1). Because the ALJ properly assigned such opinion minimal weight, the court overrules this portion of the third assignment of error.

### e. Dr. Keely

Plaintiff next contends that the ALJ erred in considering Dr. Keely's August 2010 opinion that plaintiff's mental conditions caused extreme limitations, and would be expected to cause more than four absences per month. Pl. Brief at 9, Tr. 643-49. In giving such opinion lesser weight, the ALJ explained it was inconsistent with his own treatment notes, and appeared to rely heavily on plaintiff's subjective reports of symptoms and limitations, as well as her self-reported medical history. Tr. 23. Such explanation as to why he gave such opinion lesser weight fully satisfies the ALJ's burden of explanation and such determination is supported by substantial evidence of record. Because the ALJ properly assigned such opinion lesser weight, the court overrules this portion of the third assignment of error.

### f. Dr. Burgess

Plaintiff also asserts that the ALJ failed to properly weigh Dr. Burgess' opinion. Pl. Brief at 10. She fails, however, to explain how such consideration is deficient. The ALJ explained that he gave Dr. Burgess' opinion "some weight," but that the doctor's opinion was not specific enough in describing the scope of Plaintiff's limitations. Tr. 23. Here, the ALJ fully satisfied his burden of explanation and his reasons for giving such opinion "some weight" are supported by substantial evidence. Because the ALJ properly assigned such opinion some weight, the court overrules this portion of the third assignment of error.

### g. GAF Scores

Plaintiff contends that the ALJ erred in not acknowledging two GAF scores of 40 and 31. Pl. Brief at 10-11. While not cited by plaintiff, Dr. Marcus also assessed plaintiff with a GAF score of 52. Tr. 624.

The GAF scale judges an individual's level of functioning only at the time of evaluation. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, 30 (4th ed. 1994). A GAF score of 51-60 would indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. However, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Instead, there must be evidence that the impairment also impacted plaintiff's ability to perform basic work activities. Rogers v. Massanari, 226 F. Supp. 2d 1040, 1045 (E.D.Mo. 2002). It is well-established that GAF scores ranging from even 45 to 50 are not evidence that a claimant's mental impairment is vocationally disabling. Wind v. Barnhart, 2005 WL 1317040, at *6 n.5 (11th Cir. Jun. 2, 2005) (noting that "the Commissioner has declined to endorse GAF scale

for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no direct correlation to severity requirements of mental disorders listings."); Ward v. Astrue, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A]n opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations."); Kornecky v. Commissioner, 2006 WL 305648, at *13 (6th Cir. Feb. 9, 2006) (GAF score "may have little or no bearing" on claimant's occupational functioning); Querido v. Barnhart, 344 F. Supp. 2d 236, 246 (D. Mass. 2004) (GAF score of 50, standing alone, does not provide significant insight into whether claimant can work); Lopez v. Barnhart, 2003 WL 22351956, at *2 (10th Cir. Oct. 16, 2003) (GAF score of 40 may indicate problems unrelated to work ability and, standing alone, "does not evidence an impairment seriously interfering with claimant's ability to work.")

As to the GAF score of 40 from Meridian, such score included a disclaimer that the assessor must "accept an individual at his/her own word" and that the assessment "is not intended as an objective evaluation of an individual's status or capacity." Tr. 523. It further states that the assessment "may not be appropriate for legal or other considerations by third party interests." Id. Thus, it is not error for the ALJ to not discuss a score that was never intended to be objective or to be used by a third party.

As to the GAF score of 31, which suggests major impairments in several areas or some impairment in reality testing, DSM-IV at 32, such GAF score comprised a part of Dr. Keely's opinion (discussed above), which the ALJ properly afforded less weight. The ALJ explained that less weight was afforded such opinion because: the opinion was inconsistent with his treatment notes and appeared to rely heavily on plaintiff's own subjective reports of symptoms and

limitations, as well as her self-reported medical history; the doctor minimized Plaintiff's "substantial and continuing history of drug and alcohol use"; and the opinion was inconsistent with Dr. Marcus' psychological testing that revealed a lack of effort and other contrary findings. Tr. 23. Substantial evidence supported those conclusions.

A GAF score is not dispositive and has no direct legal or medical correlation to the severity requirements of social security regulations. Pope v. Colvin, 2014 WL 944609 (W.D.N.C. Mar. 11, 2014); Minish v. Astrue, No. 1:12–cv–01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013). "[N]either agency regulations nor case law requires an ALJ to determine the extent of a claimant's mental disability based entirely on GAF scores." Id. (quoting Beasley v. Astrue, No. 7:10–cv–232, 2102 WL 707091, at *5 (E.D.N.C. Mar. 5, 2012)). Thus, this assignment of error is without merit. Because the ALJ did not err, the court overrules this portion of the third assignment of error.

## 5. Fourth Assignment of Error: New and Material Evidence

In her final assignment of error, plaintiff seeks remand of this matter based on evidence that was generated after the Commissioner issued her final decision in this matter. As mentioned above, such evidence has already resulted in a finding by the Commissioner favorable to plaintiff on her second application for SSI benefits, with an onset date of April 1, 2013.

The Appeals Council is required by 20, Code of Federal Regulation, Part 404.970, to review certain decisions of an ALJ. In pertinent part, the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action,

findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970.

Here, plaintiff contends that remand is appropriate based on evidence which she contends is both new and material. The sixth sentence of 42, United States Code, Section 405(g) provides:

> The court may, . . . at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

Id. In Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93 (4th Cir. 1991),[1] the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Id., at 96. See also Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). While it appears that such evidence is new, it does not appear that there is a reasonable possibility that had such evidence been available to the ALJ there would have been a different outcome.

Specifically, plaintiff has annexed to her brief two pieces of evidence not presented during the administrative process: (1) a psychological evaluation completed by Dr. William F. McDaniel, Ph.D., in October 2013; and (2) an October 2013 finding by the Social Security

---

[1] While the appellate court in Wilkins was addressing whether the Appeals Council properly addressed evidence which the claimant represented as new and material, the undersigned finds the Wilkins definitions instructive and appropriate in the circumstances presented by this case.

Administration that plaintiff was disabled based on a subsequent application, with an onset date of April 1, 2013. See Pl. Brief at 12-13. Such materials are not material because they do not relate to the period of alleged disability that was the subject of the Commissioner's decision herein. Further, such determination appears to be based on behavior by plaintiff that is inconsistent with the observations and notations found in the treatment notes covering the period at issue in this case. The court overrules this assignment of error.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: 3/26/2014

Max O. Cogburn Jr.
United States District Judge